## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **MIGUEL RIVERA** | § | |
| **Plaintiff** | § | **Case No.:  1:24-cv-4684** |
| **v.** | § | |
| **EXPERIAN INFORMATION** | § | |
| **SOLUTIONS, INC., TRANSUNION** | § | |
| **L.L.C., UNIVERSITY ACCOUNTING** | § | |
| **SERVICE, LLC, and** | § | |
| **THE TRUSTEES OF COLUMBIA** | § | |
| **UNIVERSITY IN THE CITY OF NEW** | | |
| **YORK,** | | |
| **Defendants** | | |

### COMPLAINT AND JURY DEMAND

### *Summary of Claims*[1]

Plaintiff Miguel Rivera brings suit against the credit reporting agencies EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") and TRANSUNION L.L.C. ("TransUnion"), the servicer and furnisher UNIVERSITY ACCOUNTING SERVICE, LLC ("UAS"), and the creditor and furnisher THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK ("Columbia") for their violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* and committing defamation, and against Experian and TransUnion for committing negligence and gross negligence.

Miguel Rivera had his student loan debt, held by Columbia and serviced at all relevant times by UAS, discharged through the Department of Education's Total and Permanent Disability (TPD) program. Despite this, Experian and TransUnion reported inaccurately that he had an

---

[1] This summary is not intended to limit the basis of Plaintiff's claims as the full factual basis for the claims are laid out in far greater detail in the statement of facts.

outstanding balance after the date the discharge was granted. At first, it seemed like the problem was a disconnect between Columbia, UAS, and Nelnet, and Mr. Rivera was told by Columbia on March 12, 2020 that "your credit report should be cleared of the delinquent remarks." Instead, Mr. Rivera received a collection letter from UAS on April 1, 2020. Mr. Rivera continued to navigate the labyrinthian bureaucracy of student loan debt to determine where the problem was and how to fix his credit reports. On April 24, 2023, Nelnet provided Mr. Rivera with a letter confirming his TPD discharge. Using this letter, Mr. Rivera made a dispute to TransUnion on or around April 24, 2023 which TransUnion responded to on May 5, 2023, changing the balance of the account to $0 but inexplicably adding late payments after the debt was discharged. On January 31, 2024, Mr. Rivera sent disputes to both Experian and TransUnion, this time attaching irrefutable proof that the loan had been discharged and their reporting of late payments was inaccurate. Both Experian and TransUnion responded on February 9, 2024, refusing to fix the inaccurate reporting. On March 11, 2024, Mr. Rivera sent another set of disputes to both Experian and TransUnion with the irrefutable proof than the loan had been discharged and their reporting of late payments was inaccurate. Experian and TransUnion again refused to take off the inaccurate information from their respective reports.

The harm to Mr. Rivera's credit and the stress of having to make dispute-after-dispute to the Defendants caused him to experience bouts of depression and anxiety, causing panic attacks that he took medication for. He was prescribed new medication to strengthen his antidepressant. Additionally, Mr. Rivera's credit was severely impacted. His Equifax report, which did not have the inaccurate information, had a credit score of 803 as of October 4, 2023. Despite such high credit standing (at least per the Equifax score), Mr. Rivera had several credit applications denied, and a substantial factor for those denials was the review the potential creditors made of Mr.

2

Rivera's Experian and TransUnion reports which featured the defamatory and inaccurate reporting regarding his student loan debt.

### Jurisdiction and Venue

1.      This Court has federal question jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

2.      Declaratory relief is available under 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper in this district under 28 U.S.C. § 1391(b), because the acts and transactions that give rise to this action occurred, in substantial part, in this district.

### Parties

4.      Plaintiff Miguel Rivera ("Plaintiff" or "Mr. Rivera") is a citizen of New York who resides within this District.

5.      Plaintiff is a "consumer" as that term is defined by § 1681a(c) of the FCRA.

6.      Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation, duly authorized and qualified to do business in the State of New York.

7.      Experian is a "consumer reporting agency," as defined by FCRA §1681a(f), because it collects, evaluates and distributes information about credit history and credit worthiness.

8.      Experian regularly conducts business in the Southern District of New York.

9.      Defendant TransUnion L.L.C. ("TransUnion") is an Delaware corporation, duly authorized and qualified to do business in the State of New York.

10.     TransUnion is a "consumer reporting agency," as defined by FCRA §1681a(f), because it

3

collects, evaluates and distributes information about credit history and credit worthiness.

11.    TransUnion regularly conducts business in the Southern District of New York.

12.    Defendant University Accounting Service, LLC ("UAS") is a Wisconsin corporation duly authorized and qualified to do business in the State of New York.

13.    UAS is a student loan servicer, and facilitates the reporting of information regarding student loan debts to credit reporting agencies.

14.    UAS regularly conducts business in the Southern District of New York.

15.    All actions of UAS as the servicer of the loans at issue were done as the agent of Columbia, within the scope of its agency, and Columbia is jointly and severally liable for those actions.

16.    Defendant The Trustees of Columbia University in the City of New York ("Columbia") is a private national university duly authorized and qualified to do business in the State of New York.

17.    Columbia holds and originates credit to its students for tuition and living expenses, and it reports information regarding these student loans to credit reporting agencies.

18.    Columbia regularly conducts business in the Southern District of New York.

## Factual Allegations

### The Perkins Loan and Total Permanent Disability Discharge

19.    On September 1, 2000, Mr. Rivera began his studies at Columbia.

20.    On or around September 1, 2000, Mr. Rivera received a Perkins loan from Columbia.

21.    Mr. Rivera graduated from Columbia in October of 2005.

4

22.     Unfortunately, compounding multiple disabilities caused Mr. Rivera to be unable to work, and without his income he was unable to make payments on his student loans, including his Perkins loan.

23.     On September 12, 2018, Miguel Rivera entered into a forbearance agreement on his student loans since he could not make payments on them due to his disability.

24.     Despite this forbearance agreement, on May 31, 2019 Columbia sent an email demanding payment on his Perkins loan.

25.     Unlike some other student loans, a Perkins loan is originated by participating schools and is repaid to the school.

26.     Columbia uses UAS to service its Perkins loans, including the loan taken out by Mr. Rivera.

27.     However, Columbia did not assign the loan to UAS, and is and was responsible for all actions taken by UAS on the loan it serviced. 34 C.F.R. § 674.48

28.     Because of his disability, on July 3, 2019, Mr. Rivera (with the assistance of Brooklyn Legal Services) applied for Total and Permanent Disability Discharge for his student loans, including the Perkins Loan held by Columbia.

29.     On August 20, 2019, the Department of Education approved Mr. Rivera's TPD application, stating "Effective 08/19/2019, the Department has approved your application for discharge of the federal student loan or TEACH Grant service obligation identified below on the

basis of your total and permanent disability." **Exhibit A** (TPD Approval Letter).[2]

30.     The Letter explained that the Perkins loan would be transferred to Nelnet for discharge and a three year post-discharge monitoring period.

31.     The Letter also explained that "We have instructed your loan holder(s) to return any loan payments that were received after your disability date to the person who made the payments."

32.     In other words, Columbia was instructed that Mr. Rivera was not liable for any loan payments after his disability date, so not only would any payments made need to be returned but further any payments reported to credit reporting agencies as missed needed to be corrected to not owed.

33.     While Mr. Rivera still had plenty of struggles ahead of him, the TPD should have taken the stress of his student loans off his plate as Congress intended.

34.     To ensure that the process went smoothly, Legal Services NYC, which had assisted Mr. Rivera with applying for and obtaining his TPD, emailed Nelnet on September 10, 2019, asking for them to make sure that the loan servicers knew that the discharge was approved.

35.     On or around March 9, 2020, Mr. Rivera was told by Nelnet that it had never received his Perkins loan from Columbia or UAS for discharge, and he learned that it was still being reported on his credit reports as owed.

36.     On March 10, 2020, Mr. Rivera emailed Columbia and UAS, explaining that his Perkins loan had not been transferred from Columbia to Nelnet for discharge. **Exhibit B** (Emails Between

---

[2] All Exhibits attached to this complaint are fully incorporated by reference.

6

Rivera and Columbia), pp. 3-4.

37.    On March 11, 2020, Columbia (specifically Alexandria Monroe) responded to Mr. Rivera and told him that she would "work directly with UAS to have your Federal Perkins Loan discharged and transferred to Nelnet." *Id.,* p. 2.

38.    On March 12, 2020, Mr. Rivera emailed Columbia (via Ms. Monroe) the TPD Approval Letter, and also asked for Columbia to stop reporting missed payments and delinquent accounts to the credit bureaus. *Id.*, p. 2.

39.    That same day, Columbia responded that the TPD Approval Letter had been sent to UAS and "your credit report should be cleared of the delinquent remarks as well." *Id.,* p. 1.

40.    Mr. Rivera thought that the problem had been taken care of, and would continue to think so for the next two years.

41.    Strangely, a letter from UAS dated April 1, 2020 was uploaded to Mr. Rivera's UAS account (which he did not learn until later) which was full of inaccurate information concerning the TPD. **Exhibit C** (UAS Deferment Letter).

42.    First, the Letter refers to the TPD as a "deferment" when it was in fact a discharge of the loan.

43.    Correspondingly, the Letter treats the TPD as a deferment rather than a discharge, stating that a payment on the loan will be due October 1, 2020, when in fact the loan had been discharged.

44.    Lastly, the Letter says the "deferment" is for "09/02/2019 to 09/01/2020," when in actuality the TPD's effective date was August 19, 2019 and it was effective in perpetuity as long as further action was not taken during the 3 year monitoring period.

45.     Mr. Rivera did not see this Letter until years later.

### *Mr. Rivera Learns that His TPD Discharge Was Not Processed*

46.     On August 19, 2022, the "monitoring" period for the TPD came to an end.

47.     While the discharge was effective as of August 19, 2019, the end of this "monitoring" period irrefutably established that the loans were not only considered discharged as of August 19, 2019, but further would continue to be discharged in perpetuity.

48.     Mr. Rivera was confused as to why he did not receive any confirmation that the monitoring period had ended, and after making some calls he was shocked to learn that Columbia and UAS had never processed his discharge.

49.     On December 7, 2022, Mr. Rivera emailed Columbia and UAS, explaining that the TPD had been improperly processed as a deferment rather than discharge and that they were not responding to Nelnet's efforts to reach out to them and rectify the situation. **Exhibit B**, p. 1.

50.     Rather than contacting Nelnet or otherwise fixing their mix-up, Columbia instead sent Mr. Rivera an email on March 9, 2023, demanding $16,914.75 for the Perkins loan and telling him that it had been reported "to the national credit bureaus." **Exhibit D** (Collection Email).

51.     On April 6, 2023, the Department of Education emailed Mr. Rivera after he filed a complaint with him, detailing that there was apparently a dispute between Columbia, UAS, and Nelnet about whether the loans had been requested for the TPD and when, and the DoE advised Mr. Rivera to stay in touch with Nelnet about further steps that might be needed.

52.     Regardless of whether the error was by Columbia, Nelnet, or UAS in the procedure for finalizing the TPD, Columbia and UAS had at all relevant times the TPD Approval Letter and

8

knew or should have known that it was inaccurate to report that Mr. Rivera owed a balance on the loans and/or that he had missed payments following his date of disability.

53.     On April 24, 2023, Nelnet sent Mr. Rivera a letter confirming that his loans, including the Perkins loan, had been discharged. **Exhibit E** (Discharge Confirmation Letter).

54.     On or around April 24, 2023, Mr. Rivera made disputes online with Experian, concerning the inaccurate information about the Perkins loan.

55.     On or around May 5, 2023, TransUnion responded to Mr. Rivera's dispute, but while it "updated" information regarding "Last Payment Made; Pay Status; Terms; Date Closed; Rating; Payment Received," it continued to inaccurately report the account. **Exhibit F** (TransUnion Response to Online Dispute).

56.     TransUnion reported the "date closed" as "03/15/2023" (a date with no clear basis) and late payments for August 2018 through February 2023. *Id.*

57.     This information was both inaccurate and derogatory to Plaintiff and Plaintiff's credit history to third parties.

### *Mr. Rivera Disputes the Inaccurate Columbia Tradeline with Irrefutable Evidence*

58.     On October 4, 2023, Mr. Rivera used the app Credit Karma to look at his credit reports.

59.     Experian and TransUnion continued to report the Columbia tradeline inaccurately.

60.     On January 24, 2024, Mr. Rivera pulled his Experian and TransUnion credit reports using www.annualcreditreport.com . They were still reporting the inaccurate information.

61.     Specifically, Experian was now reporting the Columbia tradeline "Status" as "Claim filed with government" and "Missed Payments" from August 2020 to February 2023:

9

**POTENTIALLY NEGATIVE**



**Account Info**

| | |
|---|---|
| Account Name | COLUMBIA UNIVERSITY |
| Account Number | 360014XXXXXX |
| Account Type | Education |
| Responsibility | Individual |
| Date Opened | 09/29/2000 |
| Status | Claim filed with government. |

**Payment History**

| | J | F | M | A | M | J | J | A | S | O | N | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2023 | 180 | 180 | 180 | ND | G | — | — | — | — | — | — | — |
| 2022 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 |
| 2021 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 | 180 |
| 2020 | ND | ND | ND | ND | ND | ND | ND | 180 | 180 | 180 | 180 | 180 |

62.     Similarly, while TransUnion was correctly reporting the Columbia tradeline as "Current; Paid or Paying as Agreed," it was reporting missed payments from August 2020 to February 2023:

10

| June 2020 | July 2020 | August 2020 | September 2020 | October 2020 | November 2020 |
|---|---|---|---|---|---|
| Rating | Rating | Rating | Rating | Rating | Rating |
| X | X | 120 | 120 | 120 | 120 |

| December 2020 | January 2021 | February 2021 | March 2021 | April 2021 | May 2021 |
|---|---|---|---|---|---|
| Rating | Rating | Rating | Rating | Rating | Rating |
| 120 | 120 | 120 | 120 | 120 | 120 |

| June 2021 | July 2021 | August 2021 | September 2021 | October 2021 | November 2021 |
|---|---|---|---|---|---|
| Rating | Rating | Rating | Rating | Rating | Rating |
| 120 | 120 | 120 | 120 | 120 | 120 |

| December 2021 | January 2022 | February 2022 | March 2022 | April 2022 | May 2022 |
|---|---|---|---|---|---|
| Rating | Rating | Rating | Rating | Rating | Rating |
| 120 | 120 | 120 | 120 | 120 | 120 |

| June 2022 | July 2022 | August 2022 | September 2022 | October 2022 | November 2022 |
|---|---|---|---|---|---|
| Rating | Rating | Rating | Rating | Rating | Rating |
| 120 | 120 | 120 | 120 | 120 | 120 |

| December 2022 | January 2023 | February 2023 |
|---|---|---|
| Rating | Rating | Rating |
| 120 | 120 | 120 |

63.     On January 31, 2024, Mr. Rivera sent his first letter disputes to Experian and TransUnion. **Exhibit G** (First Dispute to Experian) and **Exhibit H** (First Dispute to TransUnion).

64.     The Disputes both attached:

   a.  Mr. Rivera's NY State Photo ID;

   b.  The respective credit report;

   c.  The August 19, 2019 TPD Letter; and

11

      d.  The April 24, 2023 Confirmation of Discharge.

65.     Experian and TransUnion received the disputes, triggering their duties to perform a reasonable reinvestigation under FCRA. 15 U.S.C. § 1681i(a)(1).

66.     Experian and TransUnion provided notice of the disputes to Columbia and UAS in accordance with FCRA. 15 U.S.C. § 1681i(a)(2).

67.     Columbia and UAS received notice of the disputes, triggering their duty to perform a reasonable investigation under FCRA. 15 U.S.C. § 1681s-2(b).

**<u>Defendants Either Failed to Investigate or</u>**
**<u>Investigated But Willfully Republished Clearly Inaccurate Information</u>**

68.     Defendants purportedly conducted an investigation of Mr. Rivera's dispute.

***TransUnion Response***

69.     On or around February 9, 2024, TransUnion sent Mr. Rivera a response to his dispute. **Exhibit I** (TransUnion Response to First Dispute).

70.     This response was entirely boilerplate and, without looking at the enclosed "updated" Columbia tradeline, it would be impossible to discern what conclusion if any TransUnion came to:

> "Our investigation of the dispute you submitted is now complete. After a review of your dispute and any provided documentation, we took one or more of the following action(s):
>
> 1. Updated your credit report based on the information you provided; OR
>
> 2. Determined that the information you disputed either does not appear on your credit file or already shows the requested status; OR
>
> 3. Determined that the data furnisher had previously verified the reported information. If any of the items you dispute were previously verified, a separate communication was sent to you listing those items along with the data furnisher's contact information; OR
>
> 4. Asked the data furnisher reporting the information you disputed to do all of the

12

following:

- Review relevant information we sent them, including any provided documents
- Investigate your dispute and verify whether information they report is accurate
- Provide us a response to your dispute and update any other information
- Update their records and systems, if necessary;"

**Exhibit I** (TransUnion Response to First Dispute).

71.     However, by reviewing the attached tradeline (*Id.,* p. 5), it was clear that TransUnion was continuing to publish the inaccurate information.

72.     Knowing from its own records that Mr. Rivera's Perkins loan was discharged, Defendants Columbia and UAS maliciously, intentionally, willfully, recklessly, and in grossly negligent disregard for federal and state laws and Mr. Rivera's rights, failed to conduct a reasonable investigation into Mr. Rivera's dispute and failed to update TransUnion with the TPD eliminating the inaccurately reported missed payments.

73.     Defendant TransUnion knew or should have known through a reasonable investigation of Columbia and UAS's records that Mr. Rivera had his Perkins loan discharged through TPD.

74.     Instead, defendant TransUnion maliciously, intentionally, willfully, recklessly, and in grossly negligent disregard for federal and state laws and Mr. Rivera's rights, failed to conduct a reasonable investigation into Mr. Rivera's dispute and continued to report the inaccurate and obsolete adverse tradeline on Mr. Rivera's credit report to third parties, both known and unknown, until the present day.

### *Experian Response*

75.     On or around February 29, 2024, Experian sent Mr. Rivera a response to his dispute.

**Exhibit J** (Experian Response to First Dispute).

76.     This response was entirely boilerplate and, without looking at the enclosed "updated" Columbia tradeline, it would be impossible to discern what conclusion if any Experian came to:

"Our reinvestigation of the dispute you recently submitted is now complete. If we were able to make changes to your credit report based on information you provided, we have done so. Otherwise we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary."

77.     However, by reviewing the attached tradeline (*Id.,* p. 2), it was clear that Experian was continuing to publish the inaccurate information.

78.     Knowing from its own records that Mr. Rivera's Perkins loan was discharged, Defendants Columbia and UAS maliciously, intentionally, willfully, recklessly, and in grossly negligent disregard for federal and state laws and Mr. Rivera's rights, failed to conduct a reasonable investigation into Mr. Rivera's dispute and failed to update Experian with the TPD eliminating the inaccurately reported missed payments and changing the status of the account.

79.     A status of "claim filed with government," while technically accurate inasmuch as Mr. Rivera had filed an application for a Total and Permanent Disability Discharge, is nonetheless inaccurate and misleading because the TPD application had not only been filed but approved, and further had progressed through the entirety of the 3 year post-discharge monitoring period.

80.     Defendant Experian knew or should have known through a reasonable investigation of Columbia and UAS's records that Mr. Rivera had his Perkins loan discharged through TPD.

Instead, defendant Experian maliciously, intentionally, willfully, recklessly, and in grossly negligent disregard for federal and state laws and Mr. Rivera's rights, failed to conduct a reasonable investigation into Mr. Rivera's dispute and continued to report the inaccurate and

14

obsolete adverse tradeline on Mr. Rivera's credit report to third parties, both known and unknown, until the present day.

### Mr. Rivera's Second Disputes to the Defendants

81.     On or around March 7, 2024, Mr. Rivera sent his second letter disputes to Experian and TransUnion. **Exhibit K** (Second Dispute to Experian) and **Exhibit L** (Second Dispute to TransUnion).

82.     Again, the Disputes both attached:

      a.   Mr. Rivera's NY State Photo ID;

      b.   The respective credit report;

      c.   The August 19, 2019 TPD Letter; and

      d.   The April 24, 2023 Confirmation of Discharge.

83.     Both Disputes also attached the respective response from Experian or TransUnion and the First Dispute.

84.     Experian and TransUnion received the disputes, triggering their duties to perform a reasonable reinvestigation under FCRA. 15 U.S.C. § 1681i(a)(1).

85.     Experian and TransUnion provided notice of the disputes to Columbia and UAS in accordance with FCRA. 15 U.S.C. § 1681i(a)(2).

86.     Columbia and UAS received notice of the disputes, triggering their duty to perform a reasonable investigation under FCRA. 15 U.S.C. § 1681s-2(b).

### For a Second Time, Defendants Either Failed to Investigate or Investigated But Willfully Republished Clearly Inaccurate Information

87.    Defendants purportedly conducted an investigation of Mr. Rivera's dispute.

*TransUnion Response*

88.    On or around March 22, 2024, TransUnion sent Mr. Rivera a response to his dispute.

**Exhibit M** (TransUnion Response to Second Dispute).

89.    This response was entirely boilerplate and, without looking at the enclosed "updated"

Columbia tradeline, it would be impossible to discern what conclusion if any TransUnion came

to, *identical* to the Response to the First Dispute:

> "Our investigation of the dispute you submitted is now complete. After a review of your dispute and any provided documentation, we took one or more of the following action(s):
>
> 1.  Updated your credit report based on the information you provided; OR
>
> 2.  Determined that the information you disputed either does not appear on your credit file or already shows the requested status; OR
>
> 3.  Determined that the data furnisher had previously verified the reported information. If any of the items you dispute were previously verified, a separate communication was sent to you listing those items along with the data furnisher's contact information; OR
>
> 4.  Asked the data furnisher reporting the information you disputed to do all of the following:
>
>     -   Review relevant information we sent them, including any provided documents
>     -   Investigate your dispute and verify whether information they report is accurate
>     -   Provide us a response to your dispute and update any other information
>     -   Update their records and systems, if necessary;"

**Exhibit M** (TransUnion Response to Second Dispute); *compare* **Exhibit I** (TransUnion Response to First Dispute).

90.    However, by reviewing the attached tradeline (*Id.,* p. 5), it was clear that TransUnion was

continuing to publish the inaccurate information.

91.    Knowing from its own records that Mr. Rivera's Perkins loan was discharged, Defendants

Columbia and UAS maliciously, intentionally, willfully, recklessly, and in grossly negligent

disregard for federal and state laws and Mr. Rivera's rights, failed to conduct a reasonable investigation into Mr. Rivera's dispute and failed to update TransUnion with the TPD eliminating the inaccurately reported missed payments.

92.     Defendant TransUnion knew or should have known through a reasonable investigation of Columbia and UAS's records that Mr. Rivera had his Perkins loan discharged through TPD.

93.     Instead, defendant TransUnion maliciously, intentionally, willfully, recklessly, and in grossly negligent disregard for federal and state laws and Mr. Rivera's rights, failed to conduct a reasonable investigation into Mr. Rivera's dispute and continued to report the inaccurate and obsolete adverse tradeline on Mr. Rivera's credit report to third parties, both known and unknown, until the present day.

### *Experian Response*

94.     On or around April 11, 2024, Experian sent Mr. Rivera a response to his dispute. **Exhibit N** (Experian Response to Second Dispute).

95.     This response was entirely boilerplate and, without looking at the enclosed "updated" Columbia tradeline, it would be impossible to discern what conclusion if any Experian came to, *identical* to the Response to the First Dispute:

"Our reinvestigation of the dispute you recently submitted is now complete. If we were able to make changes to your credit report based on information you provided, we have done so. Otherwise we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary."

**Exhibit N** (Experian Response to Second Dispute); *compare* **Exhibit J** (Experian Response to First Dispute).

96.     However, by reviewing the attached tradeline (*Id.,* p. 4), it was clear that Experian was continuing to publish the inaccurate information.

97.     Oddly, although it was not the subject of Mr. Rivera's Second Dispute, Experian changed the status of an unrelated Nelnet tradeline from "Paid, Closed/Never late" to "Paid, Closed."

98.     Knowing from its own records that Mr. Rivera's Perkins loan was discharged, Defendants Columbia and UAS maliciously, intentionally, willfully, recklessly, and in grossly negligent disregard for federal and state laws and Mr. Rivera's rights, failed to conduct a reasonable investigation into Mr. Rivera's dispute and failed to update Experian with the TPD eliminating the inaccurately reported missed payments and changing the status of the account.

99.     A status of "claim filed with government," while technically accurate inasmuch as Mr. Rivera had filed an application for a Total and Permanent Disability Discharge, is nonetheless inaccurate and misleading because the TPD application had not only been filed but approved, and further had progressed through the entirety of the 3 year post-discharge monitoring period.

100.    Defendant Experian knew or should have known through a reasonable investigation of Columbia and UAS's records that Mr. Rivera had his Perkins loan discharged through TPD. Instead, defendant Experian maliciously, intentionally, willfully, recklessly, and in grossly negligent disregard for federal and state laws and Mr. Rivera's rights, failed to conduct a reasonable investigation into Mr. Rivera's dispute and continued to report the inaccurate and obsolete adverse tradeline on Mr. Rivera's credit report to third parties, both known and unknown, until the present day.

### TransUnion Inexplicably Fixes Credit Report on or around May 5, 2024

101.    On May 15, 2024, Mr. Rivera received a notification on his Credit Karma account that his

credit score via TransUnion had increased by 28 points on May 5, 2024. **Exhibit O** (Credit Karma Notification).

102.    Notably, Credit Karma cited to TransUnion fixing the inaccurate information regarding the Perkins loan. *Id.*

103.    Mr. Rivera pulled his TransUnion credit report on May 15, 2024 to determine if the Credit Karma notification was accurate, and sure enough the information had been corrected.

104.    However, he was disappointed to see when he pulled his Experian credit report that the inaccurate information still appeared there.

105.    It is unclear what led TransUnion to finally fix the credit report, especially when it had responded to Mr. Rivera's disputes stating that it would not fix the information.

106.    That TransUnion failed to correct the tradeline the first time, and inexplicably corrected the tradeline when provided the same documentary evidence from Mr. Rivera, demonstrates the arbitrariness of its investigation procedure.

107.    That Experian failed to remove the inaccurate trade line when TransUnion, faced with the same documentary evidence from Mr. Rivera, ultimately corrected the train line is evidence of the failure of Experian to perform a reasonable investigation.

### **Defendants' Conduct Was a Substantial Factor for the Credit Harm Suffered by Plaintiff**

108.    The willful, reckless, and grossly negligent conduct of Defendants was a substantial factor in inflicting the significant damage to Mr. Rivera's credit rating and ability to obtain credit.

109.    On March 15, 2024, Mr. Rivera applied for a credit card, with the hopes of adding at least

19

two credit cards to help him build his credit score with Experian and TransUnion after they were negatively impacted by the inaccurate information.

110.    Within seconds of submitting the application online, he received on a notification on the website that his application had been denied.

111.    In a panic, Mr. Rivera continued to apply for credit cards, scared that he would not qualify for any of them.

112.    While he eventually was approved for a credit card, Mr. Rivera was turned down by several credit card providers, including American Express, Discover, and U.S. Bank.

113.    Mr. Rivera felt ashamed, not only because of the denials, but because he had applied for so many cards out of panic, which he knew could have a negative effect on his credit as well.

*Discover*

114.    On or around March 15, 2024, Discover mailed Mr. Rivera an Adverse Action Notice. **Exhibit P** (Discover Adverse Action Notice).

115.    Discover listed three bases for the denial: (1) "PAST AND/OR PRESENT DELINQUENT CREDIT OBLIGATIONS"; (2) "NUMBER OF MONTHS SINCE MOST RECENT INQUIRY"; and (3) "NUMBER OF CREDIT BUREA INQUIRIES." *Id.*

116.    Discover told Mr. Rivera that it had made these determinations based on his Experian and LexisNexis credit reports. *Id.,* p. 2.

117.    The inaccurate information published by Experian and furnished by Columbia and UAS was the "PAST AND/OR PRESENT DELINQUENT CREDIT OBLIGATIONS" referenced in this letter, and was a substantial factor for the credit denial.

118.     In addition to Discover's disclosure that it viewed the Experian report, the pull of Mr.

Rivera's Experian credit report on March 15, 2024 can also be seen on the credit report provided

by Experian in response to Mr. Rivera's Second Dispute. **Exhibit P**, p. 21.

### *American Express*

119.     On or around March 18, 2024, American Express sent Mr. Rivera an Adverse Action

Notice. **Exhibit Q** (American Express Adverse Action Notice).

120.     Under "Reason(s) for Our Decision," American Express referenced Mr. Rivera's Experian

FICO credit score, which in turn cited to four reasons: (1) "Account(s) not paid as agreed," (2)

"Delinquency date too recent or unknown," (3) "Insufficient number of satisfactory accounts,"

and (4) "Lack of recent information on installment accounts." *Id.*

121.     The inaccurate information published by Experian and furnished by Columbia and UAS

was a tradeline, and in some cases the only tradeline, being referenced by these four reasons, and

was a substantial factor for the credit denial.

### *U.S. Bank*

122.     On or around March 21, 2024, U.S. Bank sent Mr. Rivera an Adverse Action Notice.

**Exhibit R** (U.S. Bank Adverse Action Notice).

123.     U.S. Bank cited the Experian credit report as the basis for their denial, and further specified

four reasons: (1) "Serious delinquency"; (2) "Too many inquiries last 12 months"; (3) "Too few

accounts currently paid as agreed"; and (4) "Lack of recent installment loan information." *Id.*

124.     The inaccurate information published by Experian and furnished by Columbia and UAS

was one of the, and in some cases the only, "Serious delinquency," "Too few accounts currently

paid as agreed," and "Lack of recent installment loan information" referenced in this letter, and was a substantial factor for the credit denial.

125.     In addition to U.S. Bank's disclosure that it viewed the Experian report, the pull of Mr. Rivera's Experian credit report on March 18, 2024 can also be seen on the credit report provided by Experian in response to Mr. Rivera's Second Dispute. **Exhibit R**, p. 21.

*Other Creditors Who Saw the Inaccurate Information*

126.     In addition to Discover, American Express, and U.S. Bank, the credit report provided by Experian in response to Mr. Rivera's Second Dispute shows that Citibank, Wells Fargo ("WF CRD SVC"), Bank of America, and JPMorgan Chase Bank all pulled Mr. Rivera's Experian credit report after he had sent Defendants his First Dispute and they had either failed to investigate or willfully verified the inaccurate information. **Exhibit N**, p. 21.

127.     Further, Mr. Rivera's TransUnion credit report was pulled by Synchrony Bank on or around March 15, 2024, after Mr. Rivera had sent Defendants his First Dispute and they had either failed to investigate or willfully verified the inaccurate information (and before it was subsequently corrected on or around May 5, 2024). **Exhibit S** (Synchrony Bank Adverse Action Notice).

**Mr. Rivera Suffered Emotional Distress Because of Defendants' Conduct**

128.     Mr. Rivera has been homeless three times, most recently from September of 2015 to September of 2016.

129.     These traumatic experiences have seriously impacted him psychologically, and one of the ways they have done so is Mr. Rivera focusing as much energy as he can on maintaining good

credit so that, if and when he ever needed to find a new apartment again, he would not have any issues with credit checks in apartment applications.

130.    The issues that Mr. Rivera had with Columbia and UAS trying to collect on his Perkins loan, first during his Forbearance Agreement (**Exhibit C** ) and later after the TPD Discharge became effective on August 19, 2019, was a major source of recurring stress.

131.    The stress of trying to deal with these loans, and Columbia and UAS failing to due their due diligence in properly processing the Forbearance and TPD Discharge, caused Mr. Rivera to sink into depression.

132.    But after the email exchange with Columbia in March of 2020 (**Exhibit B**), Mr. Rivera thought he had gotten the problem taken care of, and that he could put this ugly part of his past behind him.

133.    Instead, it came back to haunt him when he learned in 2022 that Columbia and UAS had never processed the TPD Discharge.

134.    From this point on, he knew he could not rely on Columbia for accurate information, so he was always stressed, wondering about what he did not know.

135.    When he learned about the effect on his credit reports, it felt like a punch to his chest.

136.    Throughout this time, Mr. Rivera would suffer from panic attacks triggered by Defendants' conduct.

137.    His panic attack made him feel like he was in flight or fight, giving him chest compressions and what felt like inflammation on his internal organs.

138.    When this happened, Mr. Rivera would have to take Tylenol.

23

139.    His depression caused him to self-neglect, not caring about his appearance, making it hard to just get up to brush his teeth.

140.    He had problems sleeping, waking up in the middle of the night tossing and turning.

141.    Sometimes he would not fall asleep until 4 or 5 in the morning during the most stressful days.

142.    When this happened, he would have to get up and get himself something to drink.

143.    He would wake up the following morning exhausted.

144.    He feels no assurance that he won't be homeless again, he cannot put this in the past because when he tries to live in the present this thing from his past comes back to haunt him.

145.    Mr. Rivera became particularly despondent after the first responses from Experian and TransUnion – it felt like his efforts to dispute the inaccurate information was pointless.

146.    He could not understand why he was not getting anywhere.

147.    It felt spiteful, he felt penalized for giving them an opportunity to fix the problem with his Disputes.

148.    The credit reporting agencies seemed callous, like they were not looking at the evidence that he was sending them.

149.    He worked so hard to keep these accounts from going into default while he was homeless so it was triggering for this to be haunting him in the present.

150.    He felt like this could destroy his life, he knows that student loans have made people homeless.

24

151.    When he got denied credit, he felt powerless.

152.    He felt his chest compress when he learned he was denied and had a panic attack.

153.    Normally when he has had these symptoms in the past, there have been techniques he was taught by his care team which helped him to stabilize himself, but this stress was too overwhelming.

154.    He would not come out of his apartment for days, and he would go into isolation.

155.    He spoke with both his therapist and his psychiatrist about what was happening, and he was prescribed new medication to treat his depression and his dosage of other medications was increased.

156.    He wanted to visit family in Puerto Rico but never did because of the depression.

157.    He had an invitation in April of 2024 to see his sister and did not because of the depression.

158.    Early in 2024, he was going to stop going to therapy but his psychiatrist advised him not to.

### COUNT I (against Experian and TransUnion)
### Violations of FCRA § 1681c, §1681e, and §1681i, and the subsections thereto

159.    Plaintiff restates, re-alleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

160.    At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

161.    Experian and TransUnion prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding Plaintiff, as defined under 15 U.S.C. §

25

1681a(d).

162.    Such reports contained information about Plaintiff that was false, misleading, and inaccurate.

163.    Section 1681e(b) of the FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

164.    When a consumer disputes the accuracy of any information on a credit report, FCRA § 1681i(a)(l) requires a CRA to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file..." Furthermore, FCRA § 1681i(a)(4) requires a CRA to review and consider all relevant information submitted by the consumer when conducting its investigation.

165.    Experian and TransUnion violated:

> a.    15 U.S.C. §1681e(b) because they negligently failed to maintain and/or follow reasonable procedures to assure maximum accuracy in Plaintiff's credit report.
>
> b.    15 U.S.C. § 1681e(b) because they willfully failed to maintain and/or follow reasonable procedures to assure maximum accuracy in Plaintiff's credit report.
>
> c.    15 U.S.C. § 1681e(a) because they negligently failed to maintain and/or follow reasonable procedures designed to avoid violations of section 1681(c).
>
> d.    15 U.S.C. § 1681e(a) because they willfully failed to maintain and/or follow reasonable procedures designed to avoid violations of section 1681(c).
>
> e.    15 U.S.C. § 1681i because they negligently failed to conduct a reasonable

26

reinvestigation to determine the accuracy of disputed information.

    f.   15 U.S.C. § 168li because they willfully failed to conduct a reasonable reinvestigation to determine the accuracy of disputed information.

    g.   15 U.S.C. 1681i(a)(4) because they negligently failed to review and consider relevant information provided by the consumer concerning the dispute.

    h.   15 U.S.C. 1681i(a)(4) because they willfully failed to review and consider relevant information provided by the consumer concerning the dispute.

166.    As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

167.    Experian and TransUnion are liable to Plaintiff for the actual damages he has sustained as a direct and proximate result of such conduct, together with punitive damages, as well as his reasonable attorney fees under 15 U.S.C. §§ 1681n and 1681o.

**COUNT II (against Columbia and UAS)**
**Violations of FCRA § 1681s-2(b), and the subsections thereto**

168.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

169.    At all times pertinent hereto, Defendants Columbia and UAS were each a "furnisher" governed by the Fair Credit Reporting Act.

170.    At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c). At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

27

171.     After receiving notice of Plaintiff's dispute from Defendants Experian and TransUnion, Columbia and UAS willfully failed to comply with the investigation requirements imposed on furnishers of information under 15 U.S.C. § 1681s-2(b), including but not limited to, by failing to conduct an investigation with respect to the disputed information, failing to review all information provided by Experian and TransUnion, failing to report the results of the investigation to Experian and TransUnion, and failing to modify the account to remove inaccurate information.

172.     After receiving notice of Plaintiff's dispute from Defendants Experian and TransUnion, Columbia and UAS negligently failed to comply with the investigation requirements imposed on furnishers of information under 15 U.S.C. § 1681s-2(b), including but not limited to, by failing to conduct an investigation with respect to the disputed information, failing to review all information provided by Experian and TransUnion, failing to report the results of the investigation to Experian and TransUnion, and failing to modify the account to remove inaccurate information.

173.     As a direct and proximate result of such conduct, the Plaintiff suffered actual damages as set forth herein.

174.     Columbia and UAS are liable to Plaintiff for the actual damages he has sustained as a direct and proximate result of such conduct, together with punitive damages, as well as his reasonable attorney fees under 15 U.S.C. §§ 1681n and 1681o.

## COUNT III (against Experian and TransUnion)
### Experian and TransUnion's willful and malicious defamation of Plaintiff

175.     Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

176.     Defendants Experian and TransUnion have published statements both orally and through

28

writing to various creditors, prospective credit grantors, other credit reporting agencies, and other entities that the above-referenced derogatory inaccurate information belongs to the Plaintiff.

177.    Defendants Experian and TransUnion have published those statements each time a credit report on the Plaintiff has been requested from any creditor, prospective credit grantor, furnisher, or other source.

178.    The statements made by Defendants Experian and TransUnion are false in that they inaccurately reflect Plaintiff's credit information and debt repayment history, and paint Plaintiff as financially irresponsible and delinquent.

179.    Defendants Experian and TransUnion have published these statements to at least every single creditor, furnisher or prospective creditor or other entity that has requested Plaintiff's credit report.

180.    Defendants Experian and TransUnion knew that the statements were false when made, and had no factual basis for making the statements, as Plaintiff has notified them through written communication and extensive documentation that the above inaccurate information was inaccurate for the reasons stated above.

181.    In addition, and despite repeated notices from Plaintiff, Defendants Experian and TransUnion have acted with malice by failing to communicate the information provided to them by Plaintiff to all creditors, prospective creditors, furnishers of information and all other entities to whom it provides credit information concerning the Plaintiff.

182.    By knowingly publishing false, inaccurate, and misleading information on Plaintiff's credit report, Defendants Experian and TransUnion maliciously defamed Plaintiff.

183.    Experian and TransUnion had actual knowledge of the false, inaccurate, and misleading nature of such information and published it despite that actual knowledge.

184.    Experian and TransUnion's actual knowledge of the falsity and its reckless disregard for the truth demonstrates its malicious and/or willful intent to injure plaintiff.

185.    Defendants Experian and TransUnion's conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to the Plaintiff that are outlined more fully above and, as a result, Defendants Experian and TransUnion are liable to compensate the Plaintiff for the full amount of actual damages, compensatory damages and punitive damages, as well as such other relief permitted under the law.

## JURY DEMAND

186.    Plaintiff demands a trial by jury.

## PRAYER

187.    For these reasons, plaintiff asks for judgment against defendants for the following:

    a.  Statutory damages under the FCRA of not less than $100 and no more than $1,000, or actual damages, whichever is greater pursuant to 15 U.S.C. § 1681n;

    b.  Actual, statutory, exemplary, and punitive damages;

    c.  An order enjoining and directing Defendants to cease violating the FCRA, 15 U.S.C. § 1681, et seq., and New York G.B.L. § 349;

    d.  Attorney fees and costs;

    e.  Prejudgment and post-judgment interest as allowed by law;

    f.  All other relief, in law and in equity, both special and general, to which plaintiff may be justly entitled.

Dated: Brooklyn, NY          Respectfully submitted,
June 20, 2024


*/s/ Ahmad Keshavarz*

_____

Ahmad Keshavarz
THE LAW OFFICE OF AHMAD KESHAVARZ
16 Court St., Suite 2600
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax: (877) 496-7809
Email: Ahmad@newyorkconsumerattorney.com

31