**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

MIGUEL RIVERA,

              Plaintiff,

      v.

EXPERIAN INFORMATION SOLUTIONS, INC.,
et al.,

              Defendants.

Case No. 1:24-CV-04684-GHW-BCM

**MEMORANDUM OF LAW IN SUPPORT OF EXPERIAN INFORMATION
SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION**

JONES DAY
250 VESEY STREET
NEW YORK, NEW YORK  10281
TEL: (212) 326-3939

ATTORNEYS FOR DEFENDANT
EXPERIAN INFORMATION SOLUTIONS, INC.

## **INTRODUCTION**

This is an action under the Fair Credit Reporting Act.  The plaintiff, Miguel Rivera, alleges that EIS inaccurately reported credit information about him in violation of the FCRA.  Pursuant to Plaintiff's written agreement, Experian Information Solutions, Inc. ("EIS") elects to adjudicate Plaintiff's claims in arbitration before the American Arbitration Association ("AAA").

The outcome of this motion should be the same as that in *Meeks v. Experian Info. Sols. Inc.*, 2022 WL 17958634 (9th Cir. Dec. 27, 2022), *Cimillo v. Experian Info. Sols. Inc.*, 2023 WL 2473403 (S.D.N.Y. Mar. 13, 2023) (Briccetti, J.), *Levy v. Experian Info. Sols. Inc.*, 2023 WL 2644352 (S.D.N.Y. Mar. 27, 2023) (Karas, J.), *Oestreicher v. Equifax Info. Servs., LLC*, 2024 WL 1199902 (E.D.N.Y. Mar. 20, 2024), *Alvarez v. Experian Info. Sols. Inc.*, 2023 WL 2519249 (E.D.N.Y. Mar. 15, 2023), *Rangel v. Experian Info. Sols. Inc.*, 2024 WL 4203361 (E.D. Cal. Sept. 16, 2024), *Jenkins v. Experian Info. Sols. Inc.*, 2024 WL 4100258 (E.D. Va. Sept. 6, 2024), *Clark v. Experian Info. Sols. Inc.*, 2024 WL 4044130 (E.D. Cal. Sept. 4, 2024), *Ferrell v. Experian Info. Sols. Inc.*, 2024 WL 158103 (C.D. Cal. Jan. 11, 2024), *Peter Topolewski v. Experian Data Corp.*, 2024 WL 3509779 (C.D. Cal. June 11, 2024), *Mark Topolewski v. Experian Data Corp.*, 2024 WL 414968 (C.D. Cal. Feb. 2, 2024), *McLees v. Experian Info. Sols. Inc.*, 2024 WL 135940 (C.D. Cal. Jan. 11, 2024), *Hanson v. Experian Info. Sols. Inc.*, 2024 WL 3509482 (N.D. Ga. July 22, 2024), *Martinez v. Experian Info. Sols. Inc.*, 2024 WL 3906775 (N.D. Tex. Aug. 22, 2024), *Buelna v. Experian Info. Sols. Inc.*, 2024 WL 3873694 (N.D. Ind. Aug. 20, 2024), *McGuire v. Experian Info. Sols. Inc.*, 2024 WL 3897073 (D. Colo. Aug. 16, 2024), *Scribner v. Experian Info. Sols. Inc.*, 2024 WL 3274838 (E.D. Cal. July 2, 2024), *Baker v. Experian Info. Sols. Inc.*, 2024 WL 3082644 (S.D. Ind. June 20, 2024), *George v. Experian Info. Sols. Inc.*, 2024 WL 3013146 (D. Md. June 14, 2024), *Pecoraro v. Experian Info. Sols. Inc.*, 2023 WL 8525114 (S.D. Fla.

Dec. 6, 2023), *Enright v. Experian Info. Sols. Inc.*, Case 1:23-cv-01230-MSN-IDD (E.D.V.A. Jan. 29, 2024), *Espinosa v. Experian Info. Sols. Inc.*, Case 1:23-cv-01444-MSN-IDD (E.D.V.A. Jan. 29, 2024), *Saucedo v. Experian Info. Sols. Inc.*, 2023 WL 4708015 (E.D. Cal. July 24, 2023), *Capps v. Experian Info. Sols. Inc.*, 2023 WL 3030990 (E.D. Cal. Apr. 21, 2023), *Evans v. Experian Info. Sols. Inc.*, 2023 WL 4714078 (C.D. Cal. July 21, 2023), *Sauer v. Experian Info. Sols. Inc.*, 2022 WL 2163016 (C.D. Cal. May 12, 2022), *Solis v. Experian Info. Sols., Inc.*, 629 F. Supp. 3d 1016 (C.D. Cal. 2022), *Johnson v. Experian Info. Sols.*, Case No. 1:22-cv-00477 (E.D. Va. Sept. 16, 2022) (Dkt. No. 37), *Pipoly v. Experian Info. Sols. Inc.*, 2023 WL 5184188 (N.D. Ga. Aug. 2, 2023), report and recommendation adopted, 2023 WL 5438171 (N.D. Ga. Aug. 21, 2023), *Abukar v. Experian Info. Sols. Inc.*, 2023 WL 3394827 (E.D. Wis. Apr. 11, 2023), *Arciniega v. Experian Info. Sols. Inc.*, No. CV-23-00245-PHX-SPL, 2023 WL 6803084 (D. Ariz. Oct. 12, 2023), *Smith v. Experian Info. Sols. Inc.*, 2023 WL 6057377 (D. N.J. Sept. 14, 2023), *Yates v. Experian Info. Sols. Inc.*, 2023 WL 4747386 (S.D. Tex. July 25, 2023), accepting Report and Recommendations, 2023 WL 5279467 (S.D. Tex. Aug. 16, 2023), *Kinkle v. Experian Info. Sols. Inc.*, 2023 WL 4105804 (S.D. Ind. June 21, 2023), *Salazar v. Experian Info. Sols. Inc.*, 2023 WL 3529635 (W.D. Mo. May 15, 2023), *Solis v. Experian Info. Sols. Inc.*, 2023 WL 4474322 (M.D. Fla. July 11, 2023), *Johnson v. Southwest Recovery Services, Inc.*, 2023 WL 1879999 (N.D. Tex. Feb. 10, 2023), accepting Report and Recommendations in *Johnson v. Southwest Recovery Services, Inc.*, 2023 WL 1944127 (N.D. Tex. Jan. 24, 2023), *Morgan v. Experian Info. Sols. Inc.*, 2022 WL 681359 (W.D. Wash. Mar. 4, 2022),  *Chong v. Experian Info. Sols. Inc.*, 2022 WL 16832742 (D. Haw. Nov. 8, 2022), *Stephens v. Experian Info. Sols. Inc.*, 614 F. Supp. 3d 735 (D. Haw. 2022), *Roberson v. Experian Info. Sols. Inc.*, 2022 WL 62270 (W.D. Tex. Jan. 5, 2022), *Coulter v Experian Info. Sols. Inc.*, 2021 WL 735726 (E.D. Pa. Feb. 25, 2021), *DeVries v. Experian Info. Sols. Inc.*, 2017

WL 733096 (N.D. Cal. Feb. 24, 2017), and *Tadic v. Experian Info. Sols. Inc.*, 2019 WL 11499103 (N.D. Ga. Mar. 13, 2019).

Like the plaintiffs in the above-cited cases, Plaintiff is a member of CreditWorks, the name of Experian's credit monitoring service provided by EIS's affiliate, ConsumerInfo.com, Inc. ("CIC") (which does business as Experian Consumer Services ("ECS")). As in those cases, Plaintiff's membership in CreditWorks predates the filing of this lawsuit. There, like here, when Plaintiff enrolled in CreditWorks, he too agreed to the Terms of Use Agreement governing that service. That contract contains an Arbitration Agreement. The Arbitration Agreement defines "ECS" to include its "affiliates." During the entire time that Plaintiff has been enrolled in CreditWorks, EIS has been an affiliate of ECS, as courts in this District have found. *See*, *e.g.*, *Cimillo*, 2023 WL 2473403, at *5 n.7 ("[N]umerous courts considering the same or similar agreements involving EIS have found EIS is properly considered an affiliate under the same or similar Arbitration Agreements.").

The Arbitration Agreement provides that Plaintiff and "ECS"—which, again, is defined under the contract to include its affiliate, EIS—agreed to arbitrate "all disputes and claims between us" that arise out of, or relate to, his CreditWorks agreement. As the Ninth Circuit and other courts have ruled, as a party to the Arbitration Agreement contained therein (by virtue of how ECS is defined under the contract), EIS may directly enforce the arbitration provision. *See* *Meeks*, 2022 WL 17958634, at *2; *Levy*, 2023 WL 2644352, at *6-7 ("[T]he Court agrees with Defendant [EIS] that it is an affiliate of ECS and a party to the contract."); *Cimillo*, 2023 WL 2473403, at *5 (same); *Alvarez*, 2023 WL 2519249, at *6 (same); *Roberson*, 2022 WL 62270, at *2 (same); *Stephens*, 2022 WL 2716177, at *1 (same). At a minimum, EIS is a third-party

beneficiary of the contract. *Alvarez*, 2023 WL 2519249, at *6 ("Even if [EIS] could not enforce the Arbitration Agreement as a party, under a third-party beneficiary theory, [EIS] may do so.").

The Arbitration Agreement in the CreditWorks Terms of Use delegates "all issues" to an arbitrator—including all questions regarding arbitrability, enforceability and scope. *Solis*, 629 F. Supp. 3d at 1017; *see also Stephens*, 2022 WL 2716177, at *6 (holding same). The contract also incorporates the AAA rules. Thus, if there is any dispute as to the arbitrability of Plaintiff's claims, an arbitrator is to resolve such issues. *See*, *e.g.*, *Levy*, 2023 WL 2644352, at *9 (finding that these provisions express "the clear and unmistakable intent of the Parties to submit arbitrability determinations to the arbitrator").

Thus, under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, EIS respectfully moves for an order compelling this matter to arbitration, as required under Plaintiff's written agreement, and staying this action as to EIS until arbitration has been completed.

## STATEMENT OF FACTS

On June 23, 2020, Plaintiff enrolled in CreditWorks. *See* Declaration of Dan Smith ("Smith Decl."), ¶ 3. In order to successfully enroll, Plaintiff had to complete a single webform. *Id*. The form required Plaintiff to enter his personal information—*i.e.*, his name, address, phone number, and e-mail address—and create a password. *Id*. After he entered his personal information and a password, Plaintiff had to click the "Create Your Account" button on the webform in order to enroll. *Id*. Below the boxes to enter his e-mail address and password was the following disclosure: "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy." *Id*. A true and correct representation of the webform as it would have appeared when Plaintiff enrolled in CreditWorks is attached as Exhibit 1 to the Smith Declaration.

The phrase "**Terms of Use Agreement**" in the disclosure was off-set in bold blue text and, if clicked, would have presented the consumer with the full text of the agreement. *Id*., ¶ 4. That is, the phrase "Terms of Use Agreement" in the disclosure was a full text hyperlink to the Terms of Use. *Id*. Thus, before clicking the "Create Your Account" button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink "Terms of Use Agreement." *Id*. When a consumer clicked on the "Terms of Use Agreement" hyperlink, an overlay modal would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. *Id*. Below the disclosure was a large purple button that read: "Create Your Account." *Id*. The webform, the disclosure, and the "Create Your Account" button appeared on a single webpage. *Id*.

After entering his information, Plaintiff clicked the "Create Your Account" button, thereby accepting and agreeing to the Terms of Use Agreement. *Id*., ¶ 5. Plaintiff would not have been able to successfully enroll in CreditWorks unless he clicked that button. *Id*. A true and correct copy of the Terms of Use that was in effect when Plaintiff enrolled in CreditWorks is attached as Exhibit 2 to the Smith Declaration. *Id*.

The Terms of Use contains an Arbitration Agreement, which requires Plaintiff to arbitrate, among other things, all claims against "ECS" that "relate to" or "arise out of" his membership, including claims under the "Fair Credit Reporting Act." *Id*., ¶ 6. The Arbitration Agreement defines "ECS" to include its "affiliates (including, but not limited to, Experian Information Solutions, Inc.) . . . ." *Id*. at ¶ 6, 2 (explaining the relationship among the relevant Experian entities). So does the "Overview and Acceptance of Terms" section of the contract. *Id*. During the entire time that Plaintiff has been enrolled in CreditWorks, EIS has been an affiliate of ECS. *Id*. By including EIS (an affiliate) within the definition of "ECS," the Terms of Use make EIS a

5

party to the contract, as well as a party to the Arbitration Agreement contained within the contract. *Id.* Moreover, by including EIS within the "Overview and Acceptance of Terms" section, as well as within the definition of ECS in the Arbitration Agreement, the parties intended for EIS to benefit under the contract. Additionally, the Arbitration Agreement incorporates the AAA rules. *Id.*

Every version of the Terms of Use Agreement in effect during Plaintiff's enrollment has a section entitled, "Amendments," which advised him that he would be bound by the then-current Terms of Use each time he "order[ed], access[ed], or use[d]" any of the Services or Websites described in the agreement: "Each time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement." *Id.*, ¶ 7.

At all times relevant to this action, EIS contributed to the services that CreditWorks subscribers receive by providing regular access to how information appears in their EIS credit files, including changes to their credit file information. *Id.*, ¶ 8. Further, all CreditWorks subscribers are required to provide written authorization under the FCRA to obtain their credit report and/or credit score(s) on a recurring basis from EIS through CreditWorks. *Id.* The Terms of Use cover the provision of "Services," which is defined to include services to which EIS contributed as the provider of credit information—including CreditWorks and the provision of "credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit score tracking (including all the data and information contained therein), and the receipt of any alerts notifying [consumers] of changes to the information contained in [their] credit report(s)." *Id.*

6

**LEGAL ARGUMENT**

**I.      THE COURT SHOULD COMPEL THIS MATTER TO ARBITRATION**

Section 2 Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Pursuant to the FAA, arbitration must be compelled where, as here: (1) the parties have entered into a valid agreement to arbitrate, and (2) the dispute at issue comes within the scope of the arbitration agreement. *In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). An arbitration agreement governed by the FAA is presumed to be valid and enforceable. *Shearson/Am. Express v. McMahon*, 482 U.S. 220, 226 (1987). There is a presumption in favor of arbitrability, *AT&T Tech,, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986), and the party seeking to evade arbitration bears the burden of showing that the arbitration provision is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

**A.      A VALID AGREEMENT TO ARBITRATE EXISTS**

"Whether one can be bound by an arbitration clause is usually determined by looking at generally accepted principles of contract law." *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (collecting cases). Pursuant to these principles, "a party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve

7

him of such an obligation." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987), abrogated on other grounds by *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *see also Cap Gemini Ernst & Young U.S. LLC v. Arentowicz*, No. 04-CV-299, 2004 WL 1386145, at *5 (S.D.N.Y. June 22, 2004) ("An individual who signs a contract is presumed to know its contents and assent to them, unless he can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract." (citation and quotation marks omitted)). "[T]he party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." *Biggs v. Midland Credit Mgmt., Inc.*, No. 17-CV-340, 2018 WL 1225539, at *8 (E.D.N.Y. Mar. 9, 2018) (citation omitted).

Under New York law, an agreement to arbitrate disputes is enforceable if it is a valid contract. *Long v. Amway Corp.*, 306 F. Supp. 3d 601, 607 (S.D.N.Y. 2018). That standard is easily met here. Courts within this Circuit routinely enforce internet agreements where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website. *See*, *e.g.*, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (clickwrap agreements are a common type of web-based contract; they are formed when a user is presented with "a message on his or her computer screen" and is required to "manifest [ ] her assent to the terms"); *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634 (S.D.N.Y. 2020) ("The Second Circuit routinely enforces clickwrap agreements as valid and binding contracts, 'for the principal reason that the user has affirmatively assented to the terms of agreement by clicking "I agree."'") (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); *Fteja*, 841 F. Supp. 2d at 837 (collecting cases); *Forrest v. Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1011 (D.C. 2002) ("A

8

contract is no less a contract simply because it is entered into via a computer."); *In re Online Travel Co.*, 953 F. Supp. 2d 713, 719-20 (N.D. Tex. 2013) (compelling arbitration because "it was impossible to complete a transaction on the Travelocity website in the absence of affirmative assent to the User Agreement").

As a matter of law, Plaintiff agreed to the Terms of Use because:  (1) he had clear notice of the Terms of Use at the time he enrolled, (2) he was admonished that, by clicking an adjacent button, he was agreeing to be bound by the Terms of Use; and (3) he clicked the button, thereby manifesting his assent to the Terms of Use.   Courts that have construed the CreditWorks signup process, including numerous courts in this District, have concluded that design and layout of the enrollment webpage placed users on notice that they were agreeing to be bound by the Terms of Use. *Cimillo*, 2023 WL 2473403, at *5-7 (holding same); *Levy*, 2023 WL 2644352, at *7 (same); *Capps*, 2023 WL 3030990, at *3-*4 (same).  This Court should follow this well-worn path.

**B.    EIS MAY DIRECTLY ENFORCE THE ARBITRATION AGREEMENT**

EIS's status as a party to the Arbitration Agreement is well-established.  The Ninth Circuit in *Meeks* so held, finding that EIS, as an affiliate of ECS, is a party to the Arbitration Agreement in the CreditWorks Terms of Use, and can directly enforce its terms. *See Meeks*, 2022 WL 17958634, at *1-*2 ("Because the district court's denial of the motion to compel arbitration was the result of a legal error and the record is sufficiently developed to allow us to do so, we hold that [EIS] is a party to the arbitration provision."); *Morgan*, 2022 WL 681359, at *1 ("It is undisputed that the TOU applies to ECS affiliates and Plaintiff offers no cogent argument why EIS should not be considered one.").  Every other court to consider the issue has reached the same conclusion. *See Capps*, 2023 WL 3030990, at *5-*6 ("[T]he court concludes that defendant [EIS] was a party to the Arbitration Agreement."); *Levy*, 2023 WL 2644352, at *6-7 (same);

*Alvarez*, 2023 WL 2519249, at \*6 ("There is no reasonable basis to find that Plaintiff has not assented to arbitration with [EIS].").

These holdings are grounded in the language of the agreement. The "Overview and Acceptance of Terms" section of the Terms of Use defines ECS to include its affiliates, such as EIS. Smith Decl., Ex. 3. The Arbitration Agreement contained within the Terms of Use does the same. *Id*. Indeed, it includes a straightforward, bilateral promise: "ECS and you agree to arbitrate all disputes and claims between us that arise out of or relate to this Agreement, which includes any Information you obtain through the Services or Websites, to the maximum extent permitted by law [.]" *Id*. And the Arbitration Agreement clearly defines ECS to include it "parent entities, subsidiaries, [and] affiliates . . . ." *Id*. As an affiliate of ECS, EIS is swept within the definitions of "ECS" and "us" under the Arbitration Agreement, and thus qualifies as a promisee (and promisor) entitled to enforce the Arbitration Agreement that Plaintiff entered. *Meeks*, 2022 WL 17958634, at \*2.

Thus, by disclosing to users they are agreeing to arbitrate with ECS's affiliates, and requiring affirmative action by Plaintiff to assent to those terms, Plaintiff is bound by the Terms of Use Agreement and its obligation that he arbitrate his claims against EIS. *See Meeks*, 2022 WL 17958634, at \*1-\*2.

### C. AT A MINIMUM, HOWEVER, EIS IS A THIRD-PARTY BENEFICIARY

#### 1. Whether EIS Is A Third-Party Beneficiary Has Been Delegated To An Arbitrator To Decide

If there is any dispute over whether EIS qualifies as a third-party beneficiary, that issue is to be resolved by an arbitrator. By default, the parties to an arbitration agreement are presumed to have left such questions of arbitrability to the courts. *See, e.g.*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). They may alter this background rule, however, by agreeing

10

to send questions of arbitrability to an arbitrator along with the rest of the underlying dispute. Where the contract "clearly and unmistakably" does so, a court must enforce this distinct agreement by compelling disputes about arbitrability into arbitration. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

Consistent with this precedent, courts that have evaluated the CreditWorks Terms of Use have concluded that the issue of EIS's status as a third-party beneficiary has been delegated to an arbitrator. In *Sauer,* for example, the court granted EIS's motion to compel arbitration under the Terms of Use, finding that "the dispute over whether Experian is a third-party beneficiary should go to the arbitrator." 2022 WL 2163016, at *1-2 ("Plaintiff agreed that 'the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement.'"); *see also Stephens*, 2022 WL 2716177, at *6 ("[T]his court concludes that the parties [to the CreditWorks contract] have clearly and unmistakably delegated the issue of arbitrability to the arbitrator.").

These holdings are in accord with precedent. *See Portland General Electric Co. v. Liberty Mutual Insurance Co.*, 862 F.3d 981, 983–84 (9th Cir. 2017) (holding that because the contract incorporated rules similar to those found in the AAA, PGE had "delegated to the arbitrators" questions such as "whether PGE ha[d] . . . agreed to arbitrate its dispute against the [s]ureties"); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 843–44, 852 (6th Cir. 2020) (same); *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (same); *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 472-474 (1st Cir. 1989) (same); *Mobile Real Estate, LLC v. NewPoint Media Group, LLC*, 460 F. Supp. 3d 457, 477 (2020) (Karas, J.) ("a corporate relationship is a 'sufficient relationship'" to allow the question of arbitrability to be delegated); (quoting *Int'l Eng'g & Constr. S.A. v. Baker Hughes*, 399 F. Supp.

11

3d 194, 203 (S.D.N.Y. 2019) (determining that because the non-signatories had a "parent/subsidiary relationship" with one of the signatories, there was a sufficient relationship between them, and the question of arbitrability could be delegated to an arbitrator) (collecting cases)); *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 106 (S.D.N.Y. 2017) (same).

Under this precedent, an arbitrator must resolve any doubts about EIS's ability to compel arbitration as a third-party beneficiary. Not only does the Arbitration Agreement incorporate the AAA rules, *see* Smith Decl., Ex. 3, but the delegation clause broadly provides: "All issues are for the arbitrator to decide[.]" *Id.* Accordingly, because the delegation clause sends gateway questions of arbitrability to the arbitrator, any question about EIS's ability to enforce as a third-party beneficiary belong to an arbitrator too.

### 2.     Even If This Court Were To Decide The Question, EIS Plainly Is A Third-Party Beneficiary

New York, like most other jurisdictions, has recognized the doctrine of third party beneficiary. *Saratoga Schenectady v. Bette & Cring, LLC*, 83 A.D.3d 1256 (N.Y. App. Div. 2011). A third party beneficiary may invoke an arbitration agreement when (1) there exists a valid and binding contract between other parties, (2) the contract was intended to benefit the third party, and (3) the benefit to the third party is sufficiently immediate to indicate the assumption by the contracting parties of a duty to compensate the third party if the benefit is lost. *Id.* at 1256.

New York courts repeatedly have held that a third party named in a contract, either directly or as a member of a specified class, can enforce arbitration provisions as a third-party beneficiary. *In re Generali COVID-19 Travel Ins. Litig.*, 2021 WL 6052127, at *6 (S.D.N.Y. Dec. 21, 2021); *Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 456 (E.D.N.Y. 2019) (nonparty affiliate could enforce agreement requiring arbitration of "any dispute between you and [] subsidiaries or affiliates" where affiliate had "a close operating relationship" with the signatory); *Saratoga*, 83

12

A.D.3d at 1257 (plaintiff was a third-party beneficiary even though it was only known as a "related entity" of the party to the contract); *Bakon v. Rushmore Serv. Ctr., LLC*, 2017 WL 2414639, at *3 (E.D.N.Y. June 2, 2017) (holding that non-signatory could enforce arbitration agreement as an affiliate of a signatory because the "agreement identifies a class of parties who are covered by the Agreement in addition to the bank and cardholder, namely the 'employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns of you and us'" and therefore the affiliate "as a member of this class, was intended as a third party beneficiary who may enforce the Agreement").

Under this authority, EIS qualifies as a third-party beneficiary, and is entitled to enforce the Arbitration Agreement. *Alvarez*, 2023 WL 2519249, at *6 ("Even if [EIS] could not enforce the Arbitration Agreement as a party, under a third-party beneficiary theory, [EIS] may do so.").

**D.    AN ARBITRATOR IS TO DECIDE THE ARBITRABILITY OF PLAINTIFF'S CLAIMS**

Whether Plaintiff's claim falls within the scope of the Arbitration Agreement also is to be decided by an arbitrator: "All issues are for the arbitrator to decide[.]" Smith Decl., Ex. 3; *see also Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 527–30 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.").

**II.    THE ACTION MUST BE STAYED PENDING ARBITRATION**

Section 3 of the FAA expressly provides that a district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Smith v. Spizzirri*, 144 S.Ct. 1173, 1175 (2024) ("The question here is whether § 3 permits a court to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration.  It does not.").

13

**CONCLUSION**

The Motion to Compel Arbitration should be granted.

Dated:  October 10, 2024                    JONES DAY


                                            By: */s/ Maxwell C. Dvorak*
                                                Maxwell C. Dvorak

                                            Attorneys for Defendant
                                            EXPERIAN INFORMATION SOLUTIONS,
                                            INC.

14